

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**14 M -987**

- - - - - - - - - - - - - - - - - - - X

IN THE MATTER OF AN APPLICATION
FOR A SEARCH WARRANT FOR:

THE PREMISES KNOWN AND DESCRIBED
AS ELECTRONIC MAIL ADDRESS
"energycyclecn@gmail.com"

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH
WARRANT

- - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

Derek Goreczny, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

Upon information and belief, there is probable cause to believe that there is located in THE PREMISES KNOWN AND DESCRIBED AS ELECTRONIC MAIL ADDRESS "energycyclecn@gmail.com" (the "EMAIL PREMISES") subscriber/profile information, email transmission information, subject headings, to/from information, folders and email content (including all of the foregoing for deleted messages), as described more fully in Attachment B, which constitute evidence, fruits and instrumentalities of the importation of anabolic steroids into the United States, in violation of 21 U.S.C. § 952(b).

The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because this affidavit is submitted for the limited purpose of establishing probable cause for a search warrant, I have not set forth each and every fact learned during the course of the investigation.

1.  I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I have been employed by the HSI for approximately 2 years. I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for the importation of illegal narcotics into the United States. These investigations are conducted both in an undercover and overt capacity. I have participated in investigations involving search warrants and arrest warrants. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

2.  I have personally participated in the investigation of the offenses discussed below. I am familiar with the facts and circumstances of this investigation from: (a) my personal participation in this investigation, (b) reports made to me by other law enforcement authorities, and (c) information obtained from confidential sources of information.

3.  HSI is investigating the unlawful importation of anabolic steroids into the United States.

I.  BACKGROUND

4.  I am currently conducting an investigation of a China-based steroid provider that ships anabolic steroids to the United States. The organization utilizes the name Energy Cycle Co., Ltd.

5.  On February 6, 2014, I emailed the SUBJECT EMAIL ADDRESS energycyclecn@gmail.com using an undercover email account and requested a price quote

for Testosterone Propionate powder and Winstrol. Testosterone Propionate and Winstrol are anabolic steroids and Schedule III controlled substances. That same day I received a response, which provided pricing information for the Winstrol and the Testosterone Propionate. The email also stated: "Our company is a high-tech company which was established in 2005, main products are steroid and hormone…" The email also stated, "As you know, the customs is very strict with the imported parcels. So we promise 99% of success, although there was none parcel stopped in the customs. However, pls take it easy, we have resend policy. If any parcel was seized, we resend you freely. But the seized rate is really small." That email was signed "Mu."

6. On February 7, 2014, I emailed a response to the SUBJECT EMAIL ADDRESS. I again inquired about Winstrol and payment methods. Later that day, I received an email from the SUBJECT EMAIL ADDRESS which stated "Our Winstrol is in tablet, you can order 1 bottle for testing, we can use western union, money gram and bank wire for payment."

7. On February 24, 2014, I emailed the SUBJECT EMAIL ADDRESS to request a 10 gram sample order of Testosterone Propionate.

8. On February 24, 2014, I received an email from the SUBJECT EMAIL ADDRESS confirming that 10g sample of the Testosterone could be sent. The price of the samples with shipping would be 57 dollars. The email was signed "Mu" and the individual asked, "Which payment way do you like ? Western union, money gram and bank wire."

9. On March 3, 2014, I responded that I will send the payment via Western Union. The same day I received instructions on where to send the money.

10. On March 12, 2014, I received an email from the SUBJECT EMAIL ADDRESS stating that they changed the money receiver and if I wanted to continue my order then I should let them know.

11. After several additional emails regarding the purchase of steroids, on April 29, 2014, I sent an email to the SUBJECT EMAIL ADDRESS saying that the Western Union payment was sent and provided the Western Union tracking number 575-491-9806. That same day I also provided the New York shipping address to send the package.

12. On April 30, 2014, I received an email from THE SUBJECT EMAIL ADDRESS, which was signed, "Mu". The email contained a tracking number.

13. On May 8, 2014, I received an email from SUBJECT EMAIL ADDRESS stating, "I found that you have got the goods, hope our products to your satisfaction !"

14. On May 9, 2014, HSI received, through an undercover address in Queens, New York, one sample of steroids: approximately 14.6g of suspected Testosterone Propionate. The sample was packaged in a bag inside of a cardboard box.

II. THE SUBJECT EMAIL PREMISES

15. Based on the fact that the emails sent to the SUBJECT EMAIL ADDRESS regarding the purchase of controlled substances received prompt responses from the SUBJECT EMAIL ADDRESS, I believe that there is probable cause to believe that the SUBJECT EMAIL ADDRESS will contain evidence of the illegal importation of anabolic steroids into the United States.

## III. TECHNICAL BACKGROUND

16. The SUBJECT EMAIL PREMISES is an email account which is hosted by Google (hereinafter, the "email provider"). In my training and experience, I have learned that the email provider provides a variety of online services, including email access, to the general public. The email provider allows subscribers to obtain email accounts at the domain name gmail.com, such as the email account listed in Attachment A. Subscribers obtain an account by registering with the email provider. During the registration process, the email provider asks subscribers to provide basic personal information. Therefore, the computers of the email provider are likely to contain stored electronic communications and information concerning subscribers and their use of the email provider's services, such as account access information, and account application information.

17. In general, an email that is sent to the email provider's subscriber is stored in the subscriber's "mail box" on the email provider's servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on the email provider's servers indefinitely. Even if the subscriber deletes the message, it may remain in the subscribers "trash" folder or otherwise remain accessible to the subscriber.

18. When the subscriber sends an email, it is initiated at the user's computer, transferred via the Internet to the email provider's servers, and then transmitted to its end destination (the recipient). The email provider often saves a copy of the email sent. Unless the sender of the email specifically deletes the email from the email provider's server, the email can remain on the system indefinitely.

19. A sent or received email typically includes the content of the message,

source and destination addresses, the date and time at which the email was sent, and the size and length of the email. If an email user writes a draft message but does not send it, that message may also be saved by the email provider but may not include all of these categories of data.

20. A subscriber of the email provider can also store files, including emails, address books, contact or buddy lists, calendar data, pictures, and other files, on servers maintained and/or owned by the email provider.

21. In general, email providers like Google ask each of their subscribers to provide certain personal identifying information when registering for an email account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

22. Email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the email provider's website or via email clients), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other

devices were used to access the email account.

23. In some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

24. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, emails in the account, and attachments to emails, including pictures and files.

IV. INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

25. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require the email provider to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

V. CONCLUSION

26. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on the computer systems in the control of the email provider there exists evidence of a crime. Accordingly, a search warrant is requested.

27. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

28. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

29. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing these documents is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations, and not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other criminals as they deem appropriate, e.g., by posting them publicly through online forums. Therefore, premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, and notify confederates.

30. Pursuant to 18 U.S.C. § 2705(b) and for the reasons stated above, it is further requested that the Court issue an Order commanding Google not to notify any person (including the subscribers or customers of the account listed in the attached warrant) of the existence of the attached warrant until further order of the Court.

WHEREFORE, your deponent respectfully requests that the requested search warrant be issued for THE PREMISES KNOWN AND DESCRIBED AS ELECTRONIC MAIL ADDRESS "energycyclecn@gmail.com."

IT IS FURTHER REQUESTED that all papers submitted in support of this application, including the application and search warrant, be sealed until further order of the Court.

Derek Goreczny
Special Agent
United States Department of Homeland Security,
Homeland Security Investigations

Sworn to before me this
November 20, 2014

_____
THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A
Property to Be Searched

This warrant applies to information associated with energycyclecn@gmail.com that is stored at premises owned, maintained, controlled, or operated by Google, a company that accepts service of legal process at Google, Attn: Legal Department, 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B
### Particular Things to be Seized

I. **Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs or other information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

- A. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

- B. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

- C. The types of service utilized;

- D. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

- E. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

II. **Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 21 U.S.C. 952(b), including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

- A. The unlawful importation of anabolic steroids into the United States.

B. Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.